**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| RAY A. HOLLISTER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:12-CV-52-PRC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint for Judicial Review [DE 1], filed by Plaintiff Ray A. Hollister on February 3, 2012, and his Plaintiff's Social Security Memorandum [DE 21], filed by the Plaintiff on July 20, 2012. Plaintiff requests that the Administrative Law Judge's decision to deny him disability benefits be reversed or, alternatively, remanded for further proceedings. The Commissioner filed a response on September 27, 2012, and Plaintiff filed a reply on October 12, 2012. For the following reasons, the Court grant's Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On March 6, 2008, Plaintiff Ray A. Hollister filed an application for Disability Insurance Benefits , alleging disability since December 23, 2001, due to trigeminal neuralgia, glossopharyngeal neuralgia, and geniculate neuralgia. After his application was denied initially and upon reconsideration, Plaintiff timely requested an administrative hearing. On January 19, 2011, the administrative law judge ("ALJ") held a hearing, at which Plaintiff (with the representation of counsel), Plaintiff's two daughters, and a vocational expert testified.

On January 28, 2011, the ALJ issued a decision denying Plaintiff's application for benefits. The ALJ found that Plaintiff was not suffering from a disability, as defined in the Social Security

Act, at any time from the alleged onset date of December 23, 2001, through December 31, 2007, the date last insured. The ALJ made the following findings:

1. Plaintiff last met the insured status requirement of the Social Security Act on December 31, 2007.

2. Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of December 23, 2001, through his date last insured of December 31, 2007.

3. Through the date last insured, Plaintiff had the following severe impairments: trigeminal and glossopharyngeal neuralgia and hypertension.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. Plaintiff had a residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), except he can never climb ladders/ropes/scaffolds; occasionally balance; and must avoid work hazards (unprotected heights or dangerous moving machinery).

6. Through the date last insured, Plaintiff was unable to perform any past relevant work.

7. As of the date last insured, Plaintiff was an individual closely approaching advanced age.

8. Plaintiff has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the Plaintiff has transferable job skills.

10. Through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

Plaintiff sought review of this decision. On November 2, 2011, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.

*See* 20 C.F.R. § 404.955, 404.981.  Under 42 U.S.C. § 405(g), Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

### I.      Background

Plaintiff was born on January 6, 1949, making him 62 years old at the time of the ALJ's decision and 50 years old at the date of alleged onset of disability. Plaintiff has a limited education, past work experience as an assistant annealer in a steel mill, and prior military service from 1969 to 1971.

### II.     Medical Evidence

On March 2, 1999, Plaintiff was diagnosed with trigeminal neuralgia ("TM"), a neurological disorder that is characterized by sudden, electric shock-like pain around the jaw or cheek.  Plaintiff was initially prescribed increasing dosages of Neurontin but could not tolerate it, and was switched to Tegretol by September, 1999.

On October 23, 2001, Plaintiff reported severe pain and his Tegretol dosage was increased. On November 7, 2001, Plaintiff was seen at a pain management center.  He reported that his pain ranged from 3 out of 10 to 10 out of 10, and that the pain was relieved if he refrained from talking and decreased his activity but increased if he moved his mouth and touched his face.  He was treated with a mandibular nerve block, ordered to continue taking Tegretol, and was prescribed Elavil for

sleep, Liboderm patches, and Vicodin for pain.

In December 2001, Plaintiff underwent a craniotomy and decompression surgery for his TN. Plaintiff reported that it helped his pain.

On March 23, 2002, Plaintiff was evaluated at the University of Pittsburgh and reported that the surgery helped his facial pain but not his tongue and ear pain. The same day surgery was performed decompressing the ninth, tenth and fifth nerve. Scar tissue and compression of the fifth nerve were noted, and the ninth and tenth nerves were scarred.

On May 14, 2002, a brain MRI was performed, unchanged from 1999, resulting in the recommendation that demyelminating conditions such as multiple sclerosis or vasculitis be considered.

On May 21, 2002, Plaintiff received a neurosurgery evaluation. He reported that the December 2001 surgery relieved his facial pain, but not the tongue or ear pain, which still continued. He reported that talking and chewing were pain triggers. Plaintiff reported occasional balance problems. He was diagnosed with glossopharyngeal, geniculate, and trigeminal neuralgia.

Plaintiff reported continued infrequent, short-lasting shooting pain in April 2003 and October 2003. He denied complaints of dizziness or problems balancing.

On April 22, 2004, Plaintiff was seen for excruciating pain. He reported that the pain had flared up in December, 2003, with no trigger, and had been gradually getting worse. He reported that the pain was so intolerable that he felt like shooting himself, that he could not eat until the pain subsided, and that pain medication did not help.

On June 2, 2004, Plaintiff had a TN flare and reported flares with any movement, such that he was barely able to talk. He reported that Oxycontin did not help his symptoms and was

prescribed Tegretol. On June 18, 2004, Plaintiff was seen for an urgent care visit for another TN flare. On June 29, 2004, he was seen by a neurologist who reported that his gait was difficult at times, that he had mild ataxia, and that MS was suspected. He reported that he was doing well on Tegretol.

On November 18, 2004, Plaintiff reported that Tegretol was helpful, although he had to take larger doses sometimes when the pain worsened. He reported a plan to spend the winter in Florida to see if the warmer weather helped with the TN pain.

On November 15, 2005, Plaintiff reported doing very well, still taking the Tegretol although he did not have pain symptoms. He denied experiencing any dizziness. He reported that warm weather in Florida may have helped keep him from having pain, and planned to return to Florida for the winter.

On December 1, 2006, Plaintiff reported that after a pain-free period of two years, he was again experiencing episodic pain upon getting out of bed and with sudden head movements.

On October 23, 2007, Plaintiff reported an extremely painful flare of TN that was not helped by oxycodone.

Plaintiff's date last insured was December 31, 2007.

On July 18, 2008, Richard Wenzler, M.D., reviewed Plaintiff's medical records and opined that he could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently and could stand and/or walk about six hours and sit about six hours in an eight-hour day.

On October 27, 2010, at the request of the ALJ, Ashok Jilhewar, M.D., reviewed Plaintiff's medical records and also opined Plaintiff could perform medium work during the relevant period. Dr. Jilhewar noted that there was no physical residual functional capacity ("RFC") assessment from

a treating provider and no continuous period of twelve months of uncontrolled pain from Plaintiff's alleged onset date of December 31, 2001, through June 8, 2009 (after the date last insured), when Plaintiff fell from a ladder and broke his ankle. Dr. Jilhewar also noted that although there was mention of mild ataxia, no gait difficulties or treatment of ataxia was documented.

## III.    Plaintiff's Testimony

At the administrative hearing on January 19, 2011, Plaintiff testified that he had not been pain free since 1996. He described the pain as electric and stabbing, lasting for between a few seconds and a minute. During an episode, the pain would come several hours a day for several days up to two weeks. Plaintiff testified that he could go a few months between episodes.

Plaintiff testified that during severe pain episodes he would sit in a chair and refrain from moving in hopes of avoiding exacerbation of the pain, and that during even minor pain episodes he would avoid activity to keep the pain from getting worse.

## IV.    Testimony of Plaintiff's Daughters

At the administrative hearing, Plaintiff's two adult daughters testified. Kashmir Hollister, a nurse, testified that Plaintiff's pain had stopped for approximately six months after the second surgery. When the pain episodes returned after the second surgery, she testified that some were severe and others were not, and that the severe episodes occurred about monthly and lasted a few days to a couple of weeks. She stated that during a severe episode, Plaintiff would mostly sit in a chair and watch television.

The testimony of Plaintiff's second daughter, Nova Hollister, was substantially similar in regards to the severity and frequency of Plaintiff's pain. She also testified that she taught Plaintiff how to text message so that he did not have to speak.

## V. Vocational Expert Testimony

The Vocational Expert ("VE") testified that Plaintiff's past work at a steel mill would be considered medium work capacity, as recognized by the DOT. When questioned by the ALJ, the VE testified that a person capable of performing medium work, with the additional limitations of occasionally needing to balance and not working around unprotected heights and dangerous moving machinery, would not be able to perform Plaintiff's past work at a steel mill around dangerous machinery. The VE then gave three representative jobs that a person with such limitations could work: (1) a laundry worker (2,653 positions in the region), (2) an industrial cleaner (650 positions in the region), and (3) a cleaner II (transport vehicle cleaner, 227 positions in the region).

When asked by Plaintiff's attorney what affect missing two days a month due to pain would have on potential job availability, the VE testified that such absenteeism would likely eliminate work altogether. When asked, he also testified that a person who could do nothing but sit for an average of two days a month would be precluded from gainful employment.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th

Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187

F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3; (3) Does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to Step 4; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5; (5) Can the claimant perform other work given the claimant's

RFC, age, education, and experience?  If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's residual functional capacity.  "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations."  *Young*, 362 F.3d at 1000.  The ALJ must assess the RFC based on all the relevant evidence of record.  *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)).  The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ.  *Id*. at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the ALJ's conclusion that Plaintiff was not entirely credible was not supported by substantial evidence, that the ALJ's decision  failed to properly consider the nature of Plaintiff's impairment, and that the jobs cited in the step-five analysis involve significant hazards not consistent with Plaintiff's RFC assessment.

## A.      Credibility Determination

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence.  In particular, he argues that the ALJ improperly rejected Plaintiff's complaints of dizziness and problems balancing; inaccurately concluded that he was pain-free for long periods of time; impermissibly concluded that some of Plaintiff's activities indicated that he was not credible; and improperly rejected witness testimony.  The Commissioner argues that the ALJ's finding was reasonable and well-supported.  As described below, the number of non-sequiturs and the ALJ's failure to follow the applicable regulations leads the Court to remand the decision for further

proceedings on the basis of the credibility determination.

Social Security Regulations provide that, in making a disability determination, the Commissioner will consider a claimant's statement about his or her symptoms, including pain, and how they affect the claimant's daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). However, subjective allegations of disabling symptoms alone cannot support a finding of disability. *See id*. The Regulations establish a two-part test for determining whether complaints of pain contribute to a finding of disability: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the symptoms alleged; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. 20 C.F.R. § 404.1529(a).

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)      The individual's daily activities;

(2)      Location, duration, frequency, and intensity of pain or other symptoms;

(3)      Precipitating and aggravating factors;

(4)      Type, dosage, effectiveness, and side effects of any medication;

(5)      Treatment, other than medication, for relief of pain or other symptoms;

(6)      Other measures taken to relieve pain or other symptoms;

(7)      Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96–7p states that the ALJ must consider the record as a whole, including objective medical evidence, the

claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96–7p, 1996 WL 374186 (Jul. 2, 1996).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96–7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96–7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

Plaintiff first argues that the ALJ improperly rejected Plaintiff's complaints that his medication caused dizziness, imbalance, and difficulty walking. The Commissioner argues that the evidence Plaintiff cites does not document ongoing complaints of dizziness and that the ALJ accommodated any difficulties with balance or walking in his RFC by limiting Plaintiff to work that did not involve hazards and required only occasional balancing. Indeed, the record reflects several instances where the Plaintiff denied that he had problems with balance. However, the ALJ also concluded that Plaintiff's "daily activities suggest greater capacity than alleged: he . . . has performed chores requiring climbing ladders." R. at 24. As Plaintiff argues, his one-time attempt to climb a ladder led to serious injury when Plaintiff fell off the ladder and broke his ankle. The ALJ does not explain how Plaintiff's failed attempt to climb a ladder indicates his *ability* to balance rather than support his allegation that he is incapable of activities, such as climbing ladders, that

require good balance.  On remand, the ALJ is ordered to thoroughly address Plaintiff's alleged difficulties balancing, including obtaining the opinion of an examining medical expert if necessary.

Plaintiff next challenges the ALJ's credibility determination regarding Plaintiff's complaints of pain, which Plaintiff testified was so severe that it would prevent him from doing anything but sit at home and watch television.  Although Plaintiff testified that he had not been pain-free prior to his date last insured, the ALJ noted that the medical record showed substantial periods of time – at least eleven months on two occasions and nearly two years during another – in which Plaintiff advised medical providers he was pain free.

Even assuming Plaintiff was not experiencing pain during those time periods, it is not apparent from the record whether the ALJ considered if Plaintiff's lack of pain symptoms could be attributable to the fact that he was not working and was avoiding activities, such as talking or moving his head, that might cause a pain flare.  As the Social Security Ruling directs, when considering a claimant's credibility the ALJ must consider the fact that "[t]he individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms."  SSR 96–7p at *8.

The Commissioner argues that "Plaintiff's flare-ups were minor and infrequent, and appeared to be, at least at times, the result of Plaintiff's failure to take his medications."  Def. Resp. Br. at 11.  However, the ALJ did not explicitly draw these conclusions in his analysis, and the Commissioner may not now make new arguments that the ALJ did not include in his analysis.  *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."); *see also Kastner v. Astrue*,

697 F.3d 642, 648 (7th Cir. 2012) ("Under the *Chenery* doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace. On appeal, the Commissioner may not generate a novel basis for the ALJ's determination.") (citing *Chenery*, 318 U.S. at 87-88; *Parker v. Astrue,* 597 F.3d 920, 922 (7th Cir.2010)). Similarly, the Commissioner justified the ALJ's conclusion that a trip to Florida made Plaintiff less than credible by reasoning that the trip meant Plaintiff was away from his treatment providers, but that explanation is nowhere in the ALJ's decision.

On remand, the ALJ is directed to address the nature of what he terms Plaintiff's "pain-free periods" and determine the extent to which they can be attributable to Plaintiff's attempts to avoid flares.

Plaintiff also argues that the ALJ erroneously discredited the testimony of Plaintiff's daughters. Plaintiff first argues that neither daughter is a dependent and therefore it is unclear what type of special interest they have in Plaintiff's disability benefits. The Commissioner argues that it is self-evident that the daughters are interested parties by virtue of their familial relationship. This idea that family members' testimony is to be viewed with great skepticism runs counter to the Social Security Rulings, listing examples of sources who "may provide information about the seven factors listed in the regulations and may be especially helpful in establishing a longitudinal record," and specifically including "nonmedical sources such as family and friends." SSR 96-7p at *8. "Contrary to the ALJ's suggestion, nonmedical sources such as family and friends are not expected to have medical training or to be disinterested witnesses." *Macon v. Astrue*, No. 11 C 8140, 2012 WL 4854557, at *11, 2012 U.S. Dist. LEXIS 146223, at *31 (N.D. Ill. Oct. 11, 2012) (quoting *Guranovich v. Astrue*, No. 09 C 3167, 2011 WL 686358 at *19, 2011 U.S. Dist. LEXIS 15970, at

*56 (N.D. Ill. Feb.15, 2011) (quotation marks and other citations omitted).  Although SSR 96-7p does not preclude the ALJ from weighing the credibility of witnesses, the Court is concerned by what appears to be his out-of-hand dismissal, in contravention of the regulation he is directed to follow.  His failure to credit the testimony of the daughter who is a nurse is even more concerning since she has both medical training and the ability to describe Plaintiff's daily activities in great detail.

The ALJ also discredited the daughters' testimony because he found their description of his pain and difficulties speaking to be inconsistent with the rest of the record.  Plaintiff argues that the ALJ's assertion that the record "is virtually silent regarding an inability to speak" is incorrect, and refers to numerous pages of the record he claims describe his difficulties speaking, eating, and drinking.  Although several of the records appear to be cited in error and others are from dates after Plaintiff's date last insured, the remainder do indeed indicate that Plaintiff had difficulty speaking.  On remand, the ALJ is directed to follow the applicable regulations and to take into account all relevant medical and testimonial evidence in coming to his conclusions.

**B.      The ALJ's Residual Functional Capacity Finding**

Plaintiff argues that the ALJ's reliance on two non-examining medical sources in reaching the RFC was improper because their opinions are inconsistent with the record and failed to address Plaintiff's non-exertional limitations.  The Commissioner argues that the RFC is supported by substantial evidence and reasonably accommodates Plaintiff's impairments.

The RFC is an assessment of what work-related activities the claimant can perform despite his limitations. *Young*, 362 F.3d at 1000; *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1).  In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant

evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (citation omitted).

Plaintiff argues that the physicians' opinions, particularly that his symptoms improved to the point where he would need no non-exertional limitations nor precautionary measures, are inconsistent with the character of his disease. The Commissioner argues that although TN may necessitate non-exertional limitations or precautionary measures in some patients, the mere diagnosis of TN does not mean that Plaintiff requires those limitations, and Plaintiff does not provide evidence in support of his contention that he does. As described above, on remand the ALJ is directed to thoroughly address Plaintiff's claims regarding his non-exertional limitations, including considering whether Plaintiff needs to take precautionary measures to avoid pain flare-ups and the extent to which Plaintiff has difficulty balancing, including obtaining new medical evidence

as necessary.

## C.    The ALJ's Step Five Findings

Plaintiff argues that the jobs cited by the ALJ in his step five findings are inconsistent with the RFC assessment.  Specifically, Plaintiff argues that it should have been obvious to the ALJ that the cited jobs conflicted with the RFC limitation of not working around hazards or moving machinery, and that they were also inconsistent with his balance and gait difficulties.

SSR 00-4p requires an ALJ who takes testimony from a VE about the requirements of a particular job to determine whether that testimony is consistent with the DOT.  Specifically, SSR 00-4p requires:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.  In these situations, the adjudicator will:

> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and

> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2007 WL 1898704 at *4 (Dec. 4, 2000); *see also Prochaska*, 454 F.3d at 735. Furthermore, before the ALJ may rely on the VE's evidence as substantial evidence, he must make the SSR 00-4p inquiry and elicit a response for any discrepancies.  *Id*. at 735 (citing *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999)).  The SSR 00-4p ruling places the burden of making the inquiry on the ALJ, not the claimant.  *See id*.

Because the case is being remanded for other reasons described above, new VE testimony will need to be obtained based on appropriate disability and RFC findings. The ALJ is cautioned

that he must incorporate all relevant limitations in his questioning of the VE and specifically ascertain whether the cited jobs are consistent with the limitations in the RFC.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 17] and **REMANDS** this matter for further proceedings consistent with this opinion. However, the Court **DENIES** Plaintiff's request to award benefits.

SO ORDERED this 26th day of February, 2013.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record